BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
Alan R. Plutzik (Bar No. 077785)
Robert M. Bramson (Bar No. 102006)
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

MILES & WESTBROOK
Brian B. Miles (Bar No. 191136)
Joel M. Westbrook (Bar No. 196578)
1407 Oakland Blvd., Suite 107
Walnut Creek, CA 94596
Telephone: (925) 938-4500
Facsimile: (925) 938-7007

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK and AUREA SIMPSON, JEFF and MOLLI FUNK and MINDY NEWBERRY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PULTE HOME CORPORATION, a corporation; PULTE MORTGAGE, LLC, a limited liability corporation; and DOES 1 through 30, inclusive,<br><br>Defendants. | Case No. 4:11-cv-05376 SBA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION**<br><br>Class Action<br><br>Date: March 13, 2012<br>Time: 1:00 p.m.__<br>Before: Hon. Saundra Brown Armstrong |

**TABLE OF CONTENTS**

**PAGE(S)**

I.    INTRODUCTION ................................................................................................................1

II.    FACTUAL BACKGROUND .............................................................................................2

    A.    Plaintiffs' Claims Against Pulte Home ..................................................................2

    B.    Plaintiffs' Claims Against Pulte Mortgage..............................................................3

    C.    The Purchase Agreement and Its Arbitration Clause .............................................3

III.    ARGUMENT ......................................................................................................................4

    A.    The Court's Order Must Not Specify that Arbitration can Proceed Only "on an Individual Basis"..............................................................................4

        1.    The Court Should Refuse to Enforce the Provisions of the Arbitration Agreement that Purport to Restrict the Joinder of Parties ........................................................................................................5

            a.    Whether the Joinder Provision of the Arbitration Clause is Unconscionable Is for the Court, not the Arbitrator, to Decide.................................................................................5

            b.    California Law Governs the Determination of Whether the Joinder Provision of the Arbitration Clause Is Unconscionable.....................................................................5

            c.    California Unconscionability Standards...............................................6

            d.    The Joinder Provision Is Unconscionable Under California law. .......................................................................................6

        2.    The Court Must Leave to the Arbitrator the Determination of Whether Class Procedures Are Permissible in Arbitration ..........................10

        3.    If the Court Addresses Whether Class the Arbitration Clause in the Purchase Agreement Permits Class Adjudication, It Should Hold that it Does ...............................................................................12

    B.    Plaintiffs' Claims Against Pulte Mortgage Should Not Be Sent to Arbitration ...............................................................................................................13

    C.    The Court Should Stay, Rather Than Dismiss, Any Claims Asserted in this Court That Are Sent to Arbitration................................................................15

IV.    CONCLUSION .................................................................................................................15

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

i

TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*American Pipe & Constr. Co. v. Utah* 414 U.S. 538 (1974) .............................................................. 15

*Amerix Corporation v. Jones*, 2012 U.S. Dist. LEXIS 5204 (D. Md. 2012) .............................. 11, 12

*Amisil Holdings Ltd. v. Clarium Capital Management*, 622 F.Supp.2d 825
   (N.D. Cal. 2007) ............................................................................................................. 14, 15

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 173 L. Ed. 2d 832 (2009) ................................... 13

*AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S.Ct. 1740 (2011) ......................... 10, 11, 12

*Bergman v. Spruce Peak Realty, LLC*, 2011 U.S. Dist. LEXIS 131366 (D. Vt. Nov. 14, 2011) ..... 10

*Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993) ......................................................... 13

*Brown v. General Steel Domestic Sales, LLC*, 2008 WL 2128057 (C.D. Cal. May 19, 2008) ........ 15

*Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165 (N.D. Cal. 2002) ......................................................... 9

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007) ............................................................. 7

*Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209 (2009) ........................................................... 14, 15

*Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) ................................................................... 10

*Hartley v. Superior Court*, 196 Cal. App. 4th 1249 (2011) ............................................................... 6

*Hayes v. ServiceMaster Global Holdings, Inc.*, 2011 U.S. Dist. LEXIS 70160
   (N.D. Cal. June 29, 2011) ...................................................................................................... 10

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*,
   2011 U.S. Dist. LEXIS 143490 (C.D. Cal. Dec. 13, 2011) ........................................................ 14

*Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113 (2d Cir. 2011) ..................................................... 11, 12

*Jones v. Jacobson*, 195 Cal. App. 4th 1 (2011) .................................................................. 12, 13, 15

*Keating v. Superior Court* (1982) 31 Cal.3d 584 ............................................................................ 12

*Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs.*, 623 F.3d 476 (7th Cir. 2010) ................... 5

*Mission Viejo Emergency Medical Associates v. Beta Healthcare Group*, 197 Cal.App.4th 1146
   (2011) ....................................................................................................................................... 6

*Mork v. Loram Maint. of Way, Inc.*, 2012 U.S. Dist. LEXIS 2205 (D. Minn. Jan. 8, 2012) ........... 12

*Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009) ...................................................... 7, 8, 9

*Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172 (3d Cir. 2010) (*en banc*) ................................. 5, 10

*Roberts v. El Cajon Motors, Inc.*, 200 Cal. App. 4th 832 (2011) ...................................................... 5

*Saika v. Gold* 49 Cal.App.4th 1074 (1996) ........................................................................................ 8

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

ii

*Sanchez v. Valencia Holding Co., LLC,* 201 Cal. App. 4th 74 (2011) .......................................... 6, 8

*Southern Communs. Servs. v. Thomas*, 2011 U.S. Dist. LEXIS 131344
   (N.D. Ga. Nov. 3, 2011) ................................................................................................................ 10

*Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519 (1997) ...................................................................... 8

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010) .................................... 11, 12

*Unimax Express, Inc. v. Cosco N. Am., Inc.*, 2011 U.S. Dist. LEXIS 136110 (C.D. Cal. 2011)… 6, 8

**Statutes**

9 U.S.C. § 2 ........................................................................................................................................ 5

California Civil Code §1102.6b ......................................................................................................... 2

California Civil Code § 1654 ........................................................................................................... 12

California Civil Code § 1670.5 .......................................................................................................... 6

Fed. R. Civ. P. 23 (a) ....................................................................................................................... 13

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

iii

1   Plaintiffs Mark and Aurea Simpson, Jeff and Molli Funk and Mindy Newberry ("Plaintiffs")
2   submit this Memorandum of Points and Authorities in opposition to the Motion to Compel
3   Individual Arbitration and to Dismiss or Stay Action Pending Arbitration (the "Arbitration
4   Motion") filed by Defendants Pulte Home Corporation ("Pulte Home") and Pulte Mortgage, LLC
5   ("Pulte Mortgage") (collectively, "Defendants").

## I. INTRODUCTION

Defendants' Arbitration Motion should be granted in part and denied in part. The Court should grant the Motion insofar as it seeks an order (1) referring Plaintiffs' claims against Pulte Home to arbitration before the American Arbitration Association ("AAA"); and (2) staying Plaintiffs' claims in this action against Pulte Home. However, the Court must *deny* the motion to the extent that it asks the Court to specify that the claims must proceed "on an individual basis."

Specifically, the Court must not include in its order a provision prohibiting Plaintiffs from joining their arbitration claims with those of other claimants. Instead, it should apply California law and conclude that the one-sided provision of the arbitration clause Purchase Agreement between Plaintiffs and Pulte Home (the "Purchase Agreement") that purports to prohibit the joinder of the claims of more than one home purchaser in the same arbitration proceeding (the "Anti-Joinder Clause") is unconscionable and therefore unenforceable. The Court should sever it from the arbitration clause in the Purchase Agreement.

And regardless of the above, the Court must also refuse Defendants' request to include in its order a provision prohibiting the employment of class action procedures in arbitration. The arbitration agreement between Plaintiffs and Pulte Home does not include a clause prohibiting class adjudication. Under controlling law, the question of whether or not the agreement permits claims on a class action basis in the arbitral forum is a question of contract interpretation that must be left to the arbitrator. The Court, therefore, must decline to address Pulte Home's contention that class procedures may not be followed in arbitration. Alternatively, to the extent the Court does address that contention, it should reject it.

Furthermore, the Court must *deny* the Motion to the extent that it requests an order compelling arbitration of Plaintiffs' claims against Pulte Mortgage. There is no arbitration

provision in any contract between Plaintiffs and Pulte Mortgage.  Moreover, Pulte Mortgage, which did not sign the Purchase Agreement, cannot avail itself of any rights under the arbitration clause in that agreement.  Pulte Mortgage is a lender, not a seller.

## II.  FACTUAL BACKGROUND

### A.  Plaintiffs' Claims Against Pulte Home

In 2007 and 2008, Plaintiffs purchased new homes from Pulte Home in the Magnolia Park subdivision of Oakley, California (First Amended Complaint ("FAC"), ¶¶ 2-5), pursuant to a written contract bearing the title, "Pulte Homes – Purchase Agreement – Pulte Home Corporation" (the "Purchase Agreement").[1]  As part of the sales transaction between Pulte Home and each of the Plaintiffs, Pulte Home provided certain documents purporting to disclose the existence and/or status of governmental bond obligations and other assessments which were, would be or might be assessed upon the real property involved.  However, these supposed disclosures were inaccurate, incomplete and misleading in numerous respects.  FAC, ¶¶ 13-16.

Plaintiffs allege, both individually and on behalf of a class of persons who bought homes in Magnolia Park subdivision, that Pulte Home, in violation of its statutory and common law duties, misrepresented or failed to disclose the existence and magnitude of bond obligations and other governmental assessments, commonly referred to as "special taxes" or "special assessments," imposed on the real property sold to plaintiffs and the class – annual amounts which plaintiffs and the class became legally obligated to pay once they purchased the residences from Pulte Home. *Id.*, ¶ 1.  For example, in the case of Plaintiffs Mark and Aurea Simpson, Pulte Homes did not disclose that any special assessment currently existed when they purchased their home, but in fact the special taxes and special assessments that the Simpsons were obligated to pay exceeded $3,000 per year in the first year (*Id.*, ¶ 16) – with no guarantees that they would not increase substantially in succeeding years.  Among other things, Pulte Home was obligated by California Civil Code §1102.6b to disclose any assessments to service bonds issued pursuant to the Improvement Bond

---

[1] Declaration of Kim Roser in Support of Defendants' Motion to Compel Individual Arbitration and to Dismiss or Stay Action Pending Arbitration, filed 11/14/11 (the "Roser Decl."), Exhs. A-D.

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

2

1   Act of 1915.  However, although assessments for such bonds were already being imposed against
2   the property in an amount exceeding $1,500 per year, Pulte did not disclose those assessments.  *Id.*
3       Plaintiffs claim that by not disclosing these substantial obligations associated with the
4   homes it was selling, Pulte Home was able to make its homes appear more valuable than they
5   actually were, and was able to attract buyers at prices that overvalued the properties, leaving the
6   buyers of those homes with substantial, unexpected additional costs of ownership.  *Id.*, ¶ 1.

7   **B.   Plaintiffs' Claims Against Pulte Mortgage**

8   Plaintiff Mindy Newberry and some of the other Magnolia Park purchasers borrowed the
9   money necessary to buy their homes from Pulte Mortgage, a mortgage lender that is a subsidiary of
10  Pulte Home.  FAC, ¶¶ 1, 5 and 8.  Pulte Mortgage issued a document entitled "Good Faith Estimate
11  of Settlement Charges," that purported to disclose their monthly payments, including the amount of
12  any property taxes or special assessments they would incur.  In the itemization of estimated
13  monthly payments, the document clearly, but falsely, stated that the "Special Assessments"
14  plaintiffs would incur if they completed the transaction would be "$0.00."  *Id.*, ¶¶ 27-30.  Plaintiffs
15  contend, individually and on behalf of a separate Pulte Mortgage borrower class, that Pulte
16  Mortgage had a duty to fully and accurately disclose the existence and amount of bond obligations
17  and governmental assessments against the purchasers' homes, or to provide good faith estimates to
18  purchasers' homes based on currently existing special assessments, but failed to do so.  *Id.*
19  Pulte Mortgage did not sign the Purchase Agreement.  Roser Decl., Exhs. A-D.  Instead, it a
20  mortgage *lender* in connection with home purchase transactions.

21  **C.   The Purchase Agreement and Its Arbitration Clause**

22  The Purchase Agreements for all of the Plaintiffs are pre-printed documents, on the
23  letterhead of Pulte Homes and its parent, Pulte Home Corporation, that are obviously contracts of
24  adhesion.  Roser Decl., Exhs. A-C.  The Plaintiffs' terms and conditions are virtually identical to
25  each other.  *Id.*  The only portions of the agreements that are not pre-printed are blanks to be filled
26  in with the names and identifying information of the buyers and the property's address, purchase
27  price and down payment; check-boxes reflecting addenda to the agreement; the closing date; and
28  spaces for the signatures and initials of the buyer and Pulte Homes.  *Id.*

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

3

The pre-printed "General Contract Provisions" of the Agreement include a section entitled "Post-Closing Arbitration of Disputes," consisting of 14 paragraphs, labeled "A" through "N," followed by a notice, in capitalized letters, which provides:

> BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND THE FEDERAL ARBITRATION ACT … IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE OR THE FEDERAL ARBITRATION ACT.…

The arbitration clauses and the "General Contract Provisions" of which they are a part are identical for each plaintiff. They each include, *inter alia*, the following provisions:

> **B. Rules.** Claims shall be resolved in accordance with the construction industry arbitration rules of the AAA, the AAA's Supplementary Procedures for Consumer/Residential Construction Disputes (collectively, the "Rules") and the terms of this Agreement (Roser Decl., Exhs. A, B & C, pp. 7 of 10, ¶ B);
>
> \*   \*   \*
>
> **E. Joinder.** The parties may join other parties as provided in the Rules except that You may not join Your Claims against Us with the claims of any other homeowners. The parties may include Our subcontractors and suppliers in the arbitration to the extent they involve Your Claims. (Roser Decl., Exhs. A, B and C, pp. 8 of 10, ¶ E.)
>
> \*   \*   \*
>
> **G. Award.** The arbitrator is authorized to provide all recognized remedies available in law and equity for the Claims. The award of the arbitrator shall be in compliance with the statutes and case law of the state of California then in effect … (*Id.*, ¶ G.)
>
> \*   \*   \*
>
> **N. Severability**. If the arbitrator or any court determines that any provisions of this arbitration section are unenforceable for any reason, that provision shall be severed, and proceedings agreed to in this arbitration shall be conducted under the remaining enforceable terms of this arbitration section. (*Id.*, ¶ N)

### III.  ARGUMENT

**A.   The Court's Order Must Not Specify that Arbitration can Proceed Only "on an Individual Basis"**

Defendants ask the Court to specify in its arbitration order that Plaintiffs' claims may conduct their arbitrations only "on an individual basis." Defs' Br. at 9. They seek to prohibit the joinder of the claims of multiple claimants in a single arbitration, and to preclude class action

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

4

proceedings in the arbitral forum.  The Court should rule that the restriction on joinder is unconscionable, and should leave for the arbitrator the decision whether class procedures may be employed in arbitration.  Accordingly, the Court should decline to rule that arbitration may proceed only "on an individual basis."

> 1. **The Court Should Refuse to Enforce the Provisions of the Arbitration Agreement that Purport to Restrict the Joinder of Parties**

In support of their contention that the joinder of multiple claims in arbitration should be prohibited, Defendants cite to Paragraph E of the arbitration agreement, quoted above.  However, that clause is unconscionable and therefore unenforceable.  Accordingly, the Court should sever that provision from the agreement pursuant to Paragraph N of the arbitration clause before referring Plaintiffs' claims to arbitration.

> a. *Whether the Joinder Provision of the Arbitration Clause is Unconscionable Is for the Court, not the Arbitrator, to Decide*

The enforceability of Paragraph E should be decided by this Court, not by the arbitrator. While questions of contract interpretation and procedure in arbitration are for the arbitrator to decide in the first instance (subject to subsequent motion to confirm arbitration result), a party's contention that some or all of the arbitration agreement's express provision are unenforceable under state unconscionability principles must be addressed by the Court.  *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs.*, 623 F.3d 476, 481 (7th Cir. 2010); *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 179 (3d Cir. 2010) (*en banc*).  Thus, the question whether Plaintiffs may proceed jointly in arbitration is for the Court, since the arbitration agreement purports to forbid it.

> b. *California Law Governs the Determination of Whether the Joinder Provision of the Arbitration Clause Is Unconscionable*

Section 2 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 2, expressly provides that the Court can compel arbitration only to the extent that the arbitration provision is enforceable under generally applicable state contract law principles.  California law thus applies in deciding whether the one-sided prohibition on joinder is unconscionable.  *Roberts v. El Cajon Motors, Inc.*, 200 Cal. App. 4th 832, 846 (2011); *Mission Viejo Emergency Medical Associates v. Beta*

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

5

*Healthcare Group*, 197 Cal.App.4th 1146, 1158 n.4 (2011).  Unconscionability is a recognized contract defense which can render an arbitration agreement, or a provision of an arbitration agreement, unenforceable.  *Hartley v. Superior Court*, 196 Cal. App. 4th 1249, 1257 (2011).  *See Sanchez v. Valencia Holding Co., LLC,* 201 Cal. App. 4th 74 (2011) (refusing to enforce an arbitration clause based on unconscionability analysis under California law).[2]

### c. California Unconscionability Standards

Under California law, an unconscionable agreement or clause in an agreement is unenforceable.  Civil Code § 1670.5.  As the California Supreme Court held in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 113 (2000) ("*Armendariz*"):

> … [U]nconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. … [P]rocedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.  But they need not be present in the same degree. Essentially a sliding scale is invoked … [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Armendariz*,  24 Cal.4th at 114 (internal citations and quotation marks omitted).

### d. The Joinder Provision Is Unconscionable Under California law.

The provision of the arbitration agreement that permits joinder of parties in general, but specifically prohibits the joinder of more than one homeowner's claim in the same arbitration proceeding, is unconscionable under California law.

---

[2] *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, 131 S.Ct. 1740, 1746 (2011), did not hold that the FAA preempted California unconscionability law in general – it only held that state unconscionability laws are preempted to the extent that they single out arbitration.

> Defendants appear to argue that AT&T essentially preempts all California law relating to unconscionability. We disagree, as the case simply does not go that far. General state law doctrine pertaining to unconscionability is preserved unless it involves a defense that applies "only to arbitration or that derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue." [*Concepcion*], 131 S.Ct. at 1746. This simply does not apply here.

*Mission Viejo Emerg. Med. Assocs. v. Beta Healthcare Grp.*, 197 Cal.App.4th at 1158 n.4.  *Accord Unimax Express, Inc. v. Cosco N. Am., Inc*., 2011 U.S. Dist. LEXIS 136110 (C.D. Cal. 2011).

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

6

            (i)       <u>The Anti-Joinder Clause Is Procedurally Unconscionable</u>

> The procedural element of the unconscionability analysis concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. The element focuses on oppression or surprise. Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise is defined as the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571, 581 (2007) (citations, quotations and footnote omitted). The Anti-Joinder Clause is procedurally unconscionable.

First, there is "oppression" because the Purchase Agreement – especially the arbitration clause it contains – is an adhesion contract. A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal.4th at 113. The contract's arbitration provisions are embedded in standardized, preprinted, "General Contract Provisions" prepared by Pulte that are identical for all Plaintiffs. The Purchase Agreement as a whole, the "General Contract Provisions" and the arbitration clause were presented to Plaintiffs on a take-it-or-leave-it, no-negotiation basis. Pulte represented to Plaintiffs, in words or substance, that signing and initialing the Purchase Agreement was "necessary to purchase our home." *See* Declarations of Mark Simpson and Jeff Funk, at ¶ 3. Plaintiffs did not negotiate with Pulte about the arbitration provision, and were never given an opportunity to do so. *Id.*, at ¶ 4.

This alone is sufficient to supply the element of procedural unconscionability. *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071; *Armendariz*, 24 Cal.4th at 113 ("Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion"); *Gatton*, 152 Cal.App.4th at 582 ("Appellate courts considering unconscionability challenges in consumer cases have routinely found the procedural element satisfied where the agreement containing the challenged provision was a contract of adhesion.").

The element of "surprise" is also satisfied. In *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1573-1574 (2009) ("*Parada*"), the Court found that a clause, similar to the one at issue here,

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

7

that prohibited the party on whom the adhesion contract had been imposed from joining his claims with other claimants met the "surprise" prong of procedural unconscionability because

> [t]he weaker party would not reasonably expect that his or her claims could not be joined with others in a single proceeding. Where the contract is one of adhesion, conspicuousness and clarity of language alone may not be enough to satisfy the requirement of awareness. Where a contractual provision would defeat the "strong" expectation of the weaker party, it may also be necessary to call his attention to the language of the provision.

*Id.*, 176 Cal. App. 4th at 1571-72 (citations and quotations omitted). The *Parada* Court found "surprise" because the defendant there had not highlighted or otherwise called the plaintiffs' attention to the clause prohibiting the joinder of claims. Neither did Pulte Homes here.

(ii) <u>The Joinder Clause Is Substantively Unconscionable and Oppressive</u>

A provision of an agreement is substantively unconscionable where it is overly harsh and one-sided, lacking a "modicum of bilaterality." *Armendariz, supra*, 24 Cal.4th at 117. *See Unimax Express, Inc. v. Cosco N. Am., Inc*., 2011 U.S. Dist. LEXIS 136110 at 10-11 (C.D. Cal. 2011), (arbitration provision was substantively unconscionable where the burdens of arbitration "fell inordinately" on the weaker party). Thus, in *Armendariz*, the California Supreme Court found an arbitration clause substantively unconscionable because it required employees' claims to be brought in arbitration but allowed the employer to sue in court. *Id.*, 24 Cal.4th at 116. *See Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 1541 (1997) (same); *Saika v. Gold* 49 Cal.App.4th 1074 (1996) (finding substantively unconscionable a provision that would allow a doctor, but not his patient, a "trial de novo" if the arbitrator's award was $25,000 or greater).[3]

Here, Paragraph E of the arbitration clause in Pulte's Purchase Agreement is substantively unconscionable because it lacks even a "modicum of bilaterality." That clause permits Pulte Home to join any parties or claims in arbitration but it does not allow *home purchasers* to join or combine their claims with the claims of other purchasers to pursue relief against Pulte Home. There is no

---

[3] *See also Sanchez v. Valencia Holding Co., LLC*, 201 Cal. App. 4th 74, 83, 87 (2011) (arbitration agreement held substantively unconscionable where it contained "harsh terms that are one sided in favor of the car dealer to the detriment of the buyer," including, among others, a clause providing that customers would lose "any right to … any consolidation of individual arbitrations.")

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

8

legitimate justification for such unequal treatment. Its only effect, and its evident purpose, is to prevent homeowners from banding together and sharing the expense, effort and attorneys' fees necessary to assert claims against Pulte. It is designed, pure and simple, to discourage homeowners from bringing claims against Pulte by rendering it less economically feasible for them to do so. That is the very essence of substantive unconscionability.

Thus, in *Parada*, the Court found "substantively unconscionable to a high degree" a provision in an arbitration clause that "prohibit[ed] the consolidation or joinder of claims, so each investor must initiate a separate arbitration …." 176 Cal.App.4th at 1573-74. The Court observed:

> [Defendant] offers no explanation or justification for the prohibition on consolidation or joinder of claims. The prohibition on consolidation or joinder merely drives up the cost per party of arbitration.… [J]oinder or consolidation of multiple claims could provide a more cost-effective means of resolving multiple disputes.

*Id.* at 1581-82. The Court found that "the primary, if not only, reason" for prohibiting consolidation or joinder of claims "must be to discourage or prevent [Defendant's] customers from vindicating their rights." The Court concluded:

> On the sliding scale, this low- to mid-range amount of procedural unconscionability and the high degree of substantive unconscionability render the … No Consolidation paragraph[] of the Atlas Account Agreements unconscionable and, hence, unenforceable.

*Id.*, 176 Cal.App.4th at 1585.

In *Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1176 (N.D. Cal. 2002), the Court held a defendant's arbitration clause to be substantively unconscionable where it prohibited customers from joining their claims with each other. The Court held that by

> … precluding joinder of claims (which would make each individual customer's participation in arbitration more economical), PayPal appears to be attempting to insulate itself contractually from any meaningful challenge to its alleged practices. Under these circumstances, the Court concludes that this aspect of the arbitration clause is so harsh as to be substantively unconscionable.[4]

---

[4] In *Concepcion*, the Supreme Court held that the FAA preempted a California rule that invalidated class action bans in consumer cases. However, the Court so ruled only after finding that class actions had so many unique characteristics that the parties' *express* decision not to permit class arbitrations was entitled to FAA preemptive protection. *Concepcion*, 131 S.Ct. at 1750-53. The joinder of the claims of a few homeowners in arbitration bears no resemblance to, and has none of the characteristics of, the class procedures at issue in *Concepcion*.

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

9

1  In sum, Paragraph E of the arbitration agreement must be held to be unconscionable and therefore unenforceable. It should be severed from the arbitration clause pursuant to the severability clause of Paragraph N of the agreement, and the Court should order the arbitration to proceed without the restriction on consolidation or joinder that Paragraph E purports to impose.

**2. The Court Must Leave to the Arbitrator the Determination of Whether Class Procedures Are Permissible in Arbitration**

Defendants also urge the Court to rule that class action procedures cannot be employed in the arbitration of the disputes pleaded in the Complaint herein. However, that is an issue of contractual interpretation that is for the arbitrator, not this Court, to decide.

District courts are only authorized to resolve threshold disputes regarding (1) whether the parties have a valid arbitration agreement at all – including whether unconscionability renders all or part of an arbitration clause unenforceable; or (2) "whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Puleo*, 605 F.3d at 178-180. However, questions of "contract interpretation" aimed at discerning whether a particular procedural mechanism is authorized by a given arbitration agreement are for the arbitrator, not the court, to decide. *Bazzle*, 539 U.S. at 453; *Puleo*, *supra*.[5]

Defendants argue that *Concepcion* requires this Court to conclude that the agreement does not permit class arbitration. In so asserting, however, Defendants completely misread both *Concepcion* and the arbitration clause. *Concepcion* held only that California's "*Discover Bank* Rule*,*" which declared express class action bans in arbitration clauses to be unenforceable, was preempted by the FAA. *Id.*, 131 S. Ct. at 1753. *Concepcion* did not purport to prohibit class arbitration where an arbitrator finds that the arbitration agreement allows such procedures. Nor did *Concepcion* re-allocate from the arbitrator to the Court the authority and responsibility to interpret

---

[5] *See Bergman v. Spruce Peak Realty, LLC*, 2011 U.S. Dist. LEXIS 131366 at (D. Vt. Nov. 14, 2011) (Case referred to the arbitrator to decide whether contract permitted class arbitration); *Hayes v. ServiceMaster Global Holdings, Inc.*, 2011 U.S. Dist. LEXIS 70160, 12-14 (N.D. Cal. June 29, 2011) (same); *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113 (2d Cir. 2011) ("*Jock*") (arbitrator decided, in the first instance, whether arbitration agreement permitted class adjudication); *Amerix Corporation v. Jones*, 2012 U.S. Dist. LEXIS 5204, 22-25 (D. Md. Jan. 17, 2012) (same); *Southern Communs. Servs. v. Thomas*, 2011 U.S. Dist. LEXIS 131344 (N.D. Ga. Nov. 3, 2011) (same).

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

10

arbitration agreements to determine how, where, when or under what procedures the arbitration should be conducted – including whether or not class adjudication is permitted. Thus, in the post-*Concepcion* cases of *Jock, Amerix,* and *Thomas, supra,* courts approved arbitrators' conclusions that particular agreements allowed class proceedings in the arbitral forum.

Indeed, *Concepcion* is completely inapplicable to this case, for a simple reason – the arbitration agreement here, unlike the agreement at issue in *Concepcion*, **does not include a class action ban**. It only purports to prohibit homeowners' ability to join their claims against Pulte Homes with the individual claims of other homeowners. But *Concepcion* does not address consolidation or joinder issues at all. Thus, *Concepcion* not only does not require this Court to forbid class arbitration in this case – it does not authorize this Court to even address the issue. Thus, Defendants' argument that the Anti-Joinder Clause should also be read to prohibit class adjudication must be addressed to the arbitrator, not to this Court.[6]

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010), cited as an afterthought in a footnote of the Defendants' brief, not only does not support, but actually defeats, Defendants' contention that the Court should preemptively forbid the arbitrator from interpreting the arbitration agreement to allow class proceedings. *Stolt-Nielsen* recognizes that the question of whether an arbitration agreement should be interpreted to allow, or not allow, class arbitration proceedings, must be to be made by the arbitrator in the first instance. Indeed, *Stolt-Nielsen* arose from precisely such a determination by an arbitrator. Moreover, *Stolt-Nielsen* does not support any general proscription of class actions in arbitration. It arose in a unique factual setting – the parties *stipulated* that their agreement was "silent" as to whether class procedures were permitted in

---

[6] Defendants' cases (Defs.' Br. at 9) are inapposite. None of them hold that the Court should usurp the arbitrator's role of interpreting an arbitration agreement to determine whether it allows class procedures. All of them, unlike this case, involved arbitration clauses with class action bans. Moreover, the question addressed in all of them was whether the "*Discover Bank* Rule" rendered the class action prohibitions in the defendants' arbitration clauses unconscionable – in other words, whether the arbitration clauses at issue were *enforceable*. The Court in each case concluded, under the authority of *Concepcion,* that they were. In seeking an Order from this Court prohibiting class arbitration here, however, Defendants are not asking the Court to address the *enforceability* of Pulte Home's arbitration clause. Rather, they are asking the Court to *interpret* the arbitration agreement to determine whether the agreement allows class proceedings. That is improper.

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

11

arbitration, which the Court defined to mean that the parties had *no agreement and no intent* with respect to that issue.  The Court acknowledged, however, that an arbitrator could find such intent through the application of state-law principles of contractual interpretation, even if the agreement itself did not explicitly mention class adjudication.  *See Amerix Corporation v. Jones*, 2012 U.S. Dist. LEXIS 5204, 22-25 (D. Md. 2012) ("…neither the *Stolt-Nielsen* Court nor subsequent interpretations of the decision require explicit reference to class arbitration in order to allow it. Indeed, the *Stolt-Nielsen* Court specifically stated that it was not deciding what was required to indicate agreement to authorize class arbitration.").  *Accord Jock*, 646 F.3d at 125-26.

### 3. If the Court Addresses Whether Class the Arbitration Clause in the Purchase Agreement Permits Class Adjudication, It Should Hold that it Does

We stress that this Court *must not* address whether the arbitration agreement permits class action procedures in arbitration.  However, if the Court does so, it should conclude that the arbitration clause permits Plaintiffs to allege class claims and try to obtain certification of them.

As discussed above, neither *Concepcion* nor *Stolt-Nielsen* precludes class adjudication in arbitration.  That the arbitration agreement here does not explicitly endorse class procedures is irrelevant.  *Jock,* 646 F.3d at 127.  Thus, in both *Jock* and *Amerix*, *supra*, arbitrators' rulings allowing class arbitrations to proceed were upheld, although there was no express language in the arbitration clauses in either case authorizing class proceedings.  *See Mork v. Loram Maint. of Way, Inc.*, 2012 U.S. Dist. LEXIS 2205 (D. Minn. Jan. 8, 2012) ("*Mork*") (holding collective arbitration permissible).  The determination turns on the intent of the parties.  Here, the best reading of the words the parties actually used is that class arbitrations were contemplated as a possibility.

The Purchase Agreement recites that it is governed by California law.  Roser Decl, Exhs. A-C, pp. 8 of 10.  Contracts are interpreted in light of the law in existence at the time of their execution.  California law has long recognized and allowed class arbitrations.  *Keating v. Superior Court* (1982) 31 Cal.3d 584, 609.  Form contracts are construed strictly against the drafter.  Cal. Civil Code § 1654; *Mork* (finding, based on construction of contract against the drafter, that the agreement permitted class arbitration).  Another provision that suggests the parties intended class arbitration proceedings is Paragraph G of the arbitration agreement, which states that the arbitrator

"is authorized to provide all recognized remedies available in law or equity," and that his award shall be in compliance with California law and statutes.

Defendants argue that the Anti-Joinder Clause signifies an intent by the parties to preclude class proceedings in arbitration. Not so. First, the lack of an express class prohibition, despite the ubiquity of such clauses, undercuts any such argument. Indeed, every case Defendants cite (Defs.' Br. at 9) involved an express class action ban. Defendants suggest no reason why they did not include one when they drafted their adhesion contract, if what they really intended was to preclude class arbitration. Furthermore, joinder and class proceedings are not the same thing. Indeed, class actions are proper precisely when joinder of plaintiffs is infeasible. *See* Fed. R. Civ. P. 23 (a).

### B. Plaintiffs' Claims Against Pulte Mortgage Should Not Be Sent to Arbitration

Pulte Mortgage's contention that Plaintiffs' claims against it should be sent to arbitration is without merit. The only arbitration agreement in this case is in the Purchase Agreement, which was signed by Plaintiffs and Pulte *Home*. Pulte *Mortgage* did not sign it. Generally, the right to compel arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993). Pulte Mortgage's contention that the doctrine of "equitable estoppel" allows it to invoke an arbitration clause it did not sign is without merit.

Under California law,[7] "equitable estoppel" permits a nonsignatory to arbitrate only

> … when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations. This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement.

*Jones v. Jacobson*, 195 Cal. App. 4th 1, 20 (2011) (internal quotation marks and citations omitted) Thus, in *Jones*, a nonsignatory was not allowed to arbitrate where none of the allegations against him were based on the agreement containing the arbitration clause or any of its provisions. *Id.*

---

[7] A nonparty's claim that it can enforce an arbitration clause is determined under state law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 173 L. Ed. 2d 832, 839-40 (2009).

Similarly, in *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 218-19 (2009), arbitration was denied because Plaintiffs' claims against the nonsignatories were "unrelated to any of the obligations in the operating agreements…. The complaints do not rely on or use any terms or obligations of the operating agreements as a foundation for their claims."

Defendants argue that equitable estoppel applies because (1) Plaintiffs' claims against Pulte Mortgage arise out of the same factual nexus as their claims against Pulte Home, and (2) each cause of action is asserted against both Pulte Home and Pulte Mortgage jointly.  The defendants in *Goldman* made both of these arguments, but the Court rejected them on legal grounds.

The *Goldman* Court held that neither a common factual nexus nor "allegations of substantially interdependent and concerted misconduct by signatories and nonsignatories" are enough to permit a nonsignatory to compel arbitration under an agreement it did not sign – for equitable estoppel to apply, the Court held, the plaintiff's claims of misconduct against the nonsignatory "must be founded in or intimately connected with the obligations of the underlying agreement" containing the arbitration clause.  *Id.* at 218-19.  In other words, the estoppel will lie only if the Plaintiff is basing his claims against the nonsignatory on the very obligations of the agreement that imposes a duty to arbitrate, such that it would be *unfair* for Plaintiff to escape the obligation to arbitrate against the nonsignatory.  *Id*.  ("… the signatory to a written agreement containing an arbitration clause 'must *rely on the terms* of the written agreement in asserting [its] claims' against the nonsignatory.")[8]  Here, however, Plaintiffs' claims against Pulte Mortgage *are not* based on any obligations under the Purchase Agreement.  Its duty to disclose flowed from other sources, such as the inaccurate Good Faith Estimate.

Defendants cite no California case law in support of their position.  The two federal cases on which they rely, *Amisil Holdings Ltd. v. Clarium Capital Management*, 622 F.Supp.2d 825, 830 (N.D. Cal. 2007), and *Brown v. General Steel Domestic Sales, LLC*, 2008 WL 2128057, at *7

---

[8] *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 143490, 27-33 (C.D. Cal. Dec. 13, 2011) (Toyota, a nonsignatory, had no right to arbitrate claims against it based on the fact that the purchasers had signed arbitration agreements with the dealers who had sold them their vehicles, because the plaintiffs' claims were not based on or "intertwined with" the contracts between the customers their dealers.)

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

14

(C.D. Cal. May 19, 2008), to the extent that they assert a broader view of equitable estoppel, are inconsistent with controlling California law and must be disregarded.[9] Furthermore, *Amisil* is distinguishable. There, the nonsignatories were officers and managers of defendant Clarium who owed fiduciary duties to all Clarium investors. The claims against them arose out of the "specific terms" of the Operating Agreement that governed how Clarium would be managed – the same agreement on which plaintiffs' claims against Clarium were based. *Amisil*, 622 F. Supp. 2d at 835.

In sum, equitable estoppel cannot confer a right on Pulte Mortgage to invoke the arbitration clause of the Purchase Agreement.

### C.  The Court Should Stay, Rather Than Dismiss, Any Claims Asserted in this Court That Are Sent to Arbitration

The Court should stay rather than dismiss those claims currently pending in this Court that it sends to arbitration. Dismissal would be a harsh and unwarranted remedy. A stay would help to preserve the tolling effect of the class claims for absent class members under *American Pipe & Constr. Co. v. Utah* 414 U.S. 538 (1974) . The court can revisit any stayed claims in light of the outcome of the arbitration.

## IV.  CONCLUSION

For the foregoing reasons, the Court should rule that the Anti-Joinder Clause is unconscionable and unenforceable, and sever it from the arbitration agreement. Having done so, the Court should enter an Order directing Plaintiffs to arbitrate their claims against Pulte Home, and denying Pulte Mortgage's request for arbitration. The Court should not specify in its Order that the arbitration must be conducted "on an individual basis," as Defendants have requested. Nor should the Court decide, or express any view regarding, whether the agreement permits class procedures in arbitration.

---

[9] Pulte Mortgage cites *Amisil*, 622 F.Supp.2d at 840, and *Brown*, 2008 WL 2128057 at 7, for the proposition that a nonsignatory can invoke an arbitration clause it did not sign where, unless the signatory is compelled to arbitrate, the arbitration proceedings would be "rendered meaningless" and "the federal policy in favor of arbitration effectively thwarted." That is contrary to California law, as enunciated in *Goldman* and *Jones*. In any event, denying Pulte Mortgage's motion to compel arbitration here would not "render meaningless" the arbitration against Pulte Home.

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

15

Respectfully submitted,

Dated:  January 31, 2012	BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP


	/s/ Alan R. Plutzik
	Alan R. Plutzik
	Attorneys for Plaintiff

	2125 Oak Grove Road, Suite 120
	Walnut Creek, California  94598
	Telephone:  (925) 945-0200
	Facsimile:  (925) 945-8792

	MILES & WESTBROOK
	Brian B. Miles (Bar No. 191136)
	Joel M. Westbrook (Bar No. 196578)
	1407 Oakland Blvd., Suite 107
	Walnut Creek, CA  94596
	Telephone: (925) 938-4500
	Facsimile: (925) 938-7007

	Attorneys for Plaintiffs

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL
ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION
65499

16